IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CHAMBERS,<br><br>    Plaintiff,<br><br>  v.<br><br>SANTA CLARA COUNTY ET AL,<br><br>    Defendants.<br>_____/ | No. C 05-3308 SI<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

On August 18, 2006, the Court heard oral argument on the motion to dismiss filed by defendants Stronk and Stein. After careful consideration of the parties' papers and arguments, the Court DENIES defendants' motion.

**BACKGROUND**

Plaintiff Daniel Chambers, a former dependent of the Santa Clara County Juvenile Court, filed this action in pro per alleging various civil rights and state tort violations. Plaintiff has sued the County of Santa Clara ("County") and over 20 County officials and employees, including the Board of Supervisors, current and former directors of the Santa Clara County Social Services Agency ("SSA"), and the Department of Family and Children's Services ("DFCS"). Plaintiff has also sued S. Carey Stronk and Joan Stein of the Santa Clara County Juvenile Defenders program, who were court-appointed attorneys for plaintiff. Plaintiff's second amended complaint alleges ten causes action for claims arising under 42 U.S.C. § 1983 and California law.

Plaintiff's complaint alleges that his mother, Kelley Tucker (previously known as Kelley Mah) contacted the Santa Clara County Social Services Agency ("SSA") in April 1999 after she "became

aware of her children's sexual acting out." SAC ¶ 2.[1] The complaint alleges that instead of providing help and support for plaintiff and his family, the county social worker, defendant Kathleen Dudley, "began to conscientiously tear Daniel and his family apart." *Id.* at ¶ 3. Plaintiff alleges that he spent 4 years and nine months in the care and custody of SSA, and that while in foster care he suffered severe physical and emotional abuse. *Id.* at ¶ 4.

Relevant to the instant motion to dismiss, the complaint alleges that defendants Stronk and Stein "conspired with the social workers and . . . actively and aggressively sided with the county . . . ." *Id.* at ¶¶ 41, 52, 55.[2] According to the complaint, Stronk and Stein failed to investigate or interview plaintiff, "who would have clarified many issues and would have testified that his mother never physically abused him as well as the fact that his mother did not know about any of the children's sexual behaviors prior to the disclosure by [plaintiff's sister]." *Id.* at ¶ 43. Plaintiff further alleges that Stronk and Stein "knew it was determined and reported by two psychologists that what Jason had done didn't fall into the legal definition of 'molest' and that both psychologists had recommended the family receive services and counseling with the help of the SSA's social workers." *Id.* at ¶ 44. Plaintiff also alleges that, at some point after he had been removed from his mother's care and released to live with family friends, the Pattersons, defendant Stein knew that plaintiff has having problems with the Pattersons yet did nothing to help. *Id.* at ¶ 54. Finally, the complaint alleges that around January of 2001, plaintiff's mother served legal documents on Stronk "and/or" Stein presenting "new evidence and declarations of withheld evidence"but that they withheld such information from the courts. *Id.* at ¶ 53(4).

Now before the Court is a motion to dismiss the second amended complaint filed by defendants Stein and Stronk.

---

[1] Plaintiff and his brother, Jason Chambers, allegedly sexually molested their half-sister.

[2] For example, the complaint alleges that "[a]ll defendants had various meetings, discussion[s] at various times and various defendants at different times all came to the same conclusion and assisted and supported the Conspiracy to remove Daniel from his mother, remove custody, prevent reunification, falsely terminate family reunification services and cause the permanent removal of Daniel and his siblings from their mother. . . ." *Id.* ¶ 52.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

Defendants move to dismiss the § 1983 claims on the ground that court-appointed attorneys do not act under the color of state law. A plaintiff asserting a claim under 42 U.S.C. § 1983 must show that (1) "the conduct complained of was committed by a person acting under color of state law" and that (2) "this conduct deprived the claimant of a constitutional right." *Rinker v. County of Napa*, 831 F.2d 829, 831 (9th Cir. 1987). Plaintiff asserts that Stein and Stronk can be held liable under § 1983 because they engaged in a conspiracy with state officials to deprive him of his constitutional rights.

A Section 1983 action may lie against private parties such as Stronk and Stein if they are "willful participant[s] in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Although not cited by either party, the Court finds a recent Ninth Circuit case, *Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003), particularly instructive. In *Kirtley*, the Ninth Circuit held that a private

3

individual who had been appointed a minor's guardian ad litem in a family court proceeding was not acting under color of state law. The *Kirtley* court's analysis focused almost exclusively on the statutory definition of guardian. The guardian ad litem in *Kirtley* served two primary roles: (1) "an advocate for the best interests of the child subject to the custody dispute," and (2) "an independent source of information for the court regarding the circumstances of the custody dispute," both of which were to be carried out independent of judicial influence. *Id.* at 1093-94. The Court held that although a guardian was appointed, compensated, subject to qualification, and regulated by the state, Washington law clearly indicated that the intended benefits of the guardian "flow directly to the child, in whose interests the guardian must act." *Kirtley*, 326 F.3d at 1093 (internal citations and quotations omitted).

Similar to the guardian ad litem statute in *Kirtley*, California Welfare and Institution Code Section 317 provides that "a primary responsibility of any counsel appointed to represent a child pursuant to this section shall be to advocate for the protection, safety, and physical and emotional well-being of the child." Cal. Welf. & Inst. Code § 317(c). Court-appointed counsel are also empowered to "make or cause to have made any further investigations that he or she deems in good faith to be reasonably necessary to ascertain the facts, including the interviewing of witnesses . . . ." *Id.* at § 317(e). In addition, Section 317 further evidences the independence of court-appointed counsel by providing that these attorneys may invoke the psychotherapist-client privilege, physician-patient privilege, and clergyman-penitent privilege on behalf of the client further evidences their degree of independence from the State. *Id.* at § 317(f). The Court concludes that because of the similarities between the statutory definitions of the guardian in *Kirtley*, and that of court-appointed counsel here, there is sufficient independence from the State that, as a general matter, counsel appointed pursuant to Section 317 do not qualify as state actors for Section 1983 purposes.

However, the *Kirtley* court recognized the theoretical possibility that a plaintiff could plead facts showing that, despite the statutory role of the guardian ad litem, his or her actions were fairly attributable to or at the direction of the State. *See Kirtley*, 326 F.3d at 1095 n.5. Here, as discussed *supra*, plaintiff has alleged – albeit in a somewhat general way – that defendants Stronk and Stein conspired with the county to prevent reunification of plaintiff with his mother, despite their knowledge that plaintiff was not in any danger in his mother's care. These allegations, if proven, would show that

4

defendants Stronk and Stein were "willful participants in joint action" with the County, and thus they could be held liable under § 1983. Although the Court takes note of defendants' contentions that the complaint lacks sufficient specificity to proceed against Stronk and Stein, in light of plaintiff's *pro se* status, the Court finds that plaintiff has stated a § 1983 claim against these defendants, and DENIES defendants' motion.[3] *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("A court should liberally construe pro se civil rights pleadings, affording the plaintiff the benefit of any doubt."). As discussed at the hearing, defendants Stronk and Stein will file a motion for summary judgment as soon as practicable.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to dismiss. (Docket No. 41). Defendants shall file an answer to the second amended complaint within 20 days of the filing date of this order.

**IT IS SO ORDERED.**

Dated: August 18, 2006

SUSAN ILLSTON
United States District Judge

---

[3] Because the Court concludes that plaintiff has stated a claim under § 1983, the Court DENIES defendants' motion to dismiss the state law claims for lack of jurisdiction.

5